IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHELLE COURTRIGHT<br>8 Mill Street, P.O. Box 584<br>Lawrenceville, PA 16929<br><br>      Plaintiff,<br><br>  v.<br><br>WAL-MART, INC.<br>d/b/a Wal-Mart<br>3217 Silverback Lane<br>Painted Post, New York 14870<br><br>      Defendant. | CIVIL ACTION<br><br>No.:<br><br>**JURY TRIAL DEMANDED** |

**CIVIL ACTION COMPLAINT**

Plaintiff, Michelle Courtright, by and through her undersigned counsel, hereby avers as follows:

## I. INTRODUCTION

1. Plaintiff has initiated this action to redress violations by Wal-Mart, Inc. d/b/a Wal-Mart (hereinafter referred to as "Defendant") for violations of the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101 *et. seq*.), the Family and Medical Leave Act ("FMLA" – 29 U.S.C. § 2601 et. seq.) and the Pennsylvania Human Relations Act ("PHRA").[1] Plaintiff asserts, *inter alia*, that she was discriminated against and unlawfully terminated by Defendant.  As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

---

[1] Plaintiff's claims under the PHRA are referenced herein for notice purposes. She is required to wait 1 full year before initiating a lawsuit from date of dual-filing with the EEOC. Plaintiff's PHRA claims however will mirror identically her federal claims under the ADA.

## II.  JURISDICTION AND VENUE

2. This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's claims because this civil action arises under laws of the United States.

3. This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. § 1391 venue is properly laid in this district because Defendant is deemed to reside where they are subject to personal jurisdiction, rendering Defendant a resident of the Middle District of Pennsylvania.

5. Plaintiff is proceeding herein under the ADA and has properly exhausted her administrative remedies with respect to such claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety (90) days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

## III.  PARTIES

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual, with an address as set forth in the caption.

8. Defendant is a publicly-traded commercial enterprise with retail stores all over the United States.

9. At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

### IV.   FACTUAL BACKGROUND

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. Plaintiff worked at Defendant's Vision Center within its location at the above-captioned address. Plaintiff was hired on or about October 11, 2012 and was employed by Defendant for approximately 8 years until her unlawful termination in February of 2021.

12. At the time of her termination from Defendant in February of 2021, Plaintiff held the position of licensed Optician and worked on a full-time basis.

13. At all times relevant to this action, Plaintiff reported directly to Carol Flint (Vision Center Manager) and indirectly to Craig Stewart (Store Manager) and Zachary Seal (Market Health and Wellness Director).

14. Throughout her employment with Defendant, Plaintiff was a hard-working employee who performed her job very well and received consistently positive feedback and praise.

15. In fact, in the approximate two-year period preceding Plaintiff's termination from Defendant, Plaintiff received an "exceeds expectations" employee performance rating in her reviews, was identified in her annual evaluations as a top seller in her department and received the highest raise possible for her position in 2019.

16. Plaintiff has suffered from mental health problems, including bi-polar disorder and other associated complications, for many years and has received extensive treatment for same. As a result of her condition, Plaintiff suffers from symptoms which limit her ability (at times) to perform some

daily life activities, including, but not limited to, focusing, sleeping, engaging in social interactions and working at times. Furthermore, Plaintiff suffers from flare-ups as a result of her bi-polar disorder at times.

17. Despite her aforementioned health condition and limitations, Plaintiff was still able to perform the essential duties of her job well with Defendant; however, Plaintiff did require reasonable medical accommodations at times, including very minimal intermittent time off from work when she was unable to work due complications associated with her conditions (discussed *infra*).

18. Plaintiff's managers, including Flint, were well-aware of Plaintiff's health conditions as Plaintiff was very open and transparent about same.

19. In or about November of 2020, Plaintiff required approximately four (4) days off from work due to complications associated with her bi-polar disorder. Plaintiff offered Flint medical documentation to support her need for time off and further advised Flint that she intended to apply for intermittent FMLA leave to cover her disability-related absences and future absences.

20. In direct response to Plaintiff advising Flint of her need for time off, the reason why she needed time off and her intent to apply for FMLA leave related to same, Flint became extremely hostile with Plaintiff and told Plaintiff that she "does not care" if the absences were FMLA-related and directed Plaintiff not to call off in the future.

21. Flint also penalized Plaintiff for her medically necessary absences in November of 2020 by attributing attendance points to Plaintiff for those days off despite having full knowledge of the reason why Plaintiff needed to take the days off and having been offered medical documentation to support the absences.

22. Flint's conduct and statements were a blatant violation of Plaintiff's ADA/FMLA rights.

23. In addition to this conduct, Flint also displayed a tremendous amount of hostility towards Plaintiff's health conditions. By way of example, but not intended to be an exhaustive list, Flint frequently made inappropriate and discriminatory remarks about Plaintiff's health conditions, including by referring to problematic/difficult customers as "bi-polar" in Plaintiff's presence, accusing Plaintiff as having a "bi-polar moment" on multiple occasions and by stating to other employees to "hold onto your ass, Michelle is having a bi-polar moment."

24. These comments and conduct by Flint at work made Plaintiff extremely uncomfortable and Plaintiff found them to be very discriminatory.

25. Based on Flint's discriminatory conduct towards Plaintiff, Plaintiff complained to Stewart and Seal in November of 2020. In her complaint, Plaintiff reported Flint's discriminatory conduct and comments to Stewart and Seal and further requested that other members of management be present for any future meetings with Flint to avoid any further acts of discrimination.

26. Plaintiff also escalated her concerns regarding Flint's conduct to Ben Poole, Defendant's ethics line investigator.

27. Plaintiff ultimately applied for and was approved for intermittent FMLA leave in December of 2020 and began to utilize intermittent days off as needed. However, Defendant failed to designate Plaintiff's November absences as FMLA-qualifying and Plaintiff's attendance points associated with those days remained on her record.

28. Following Plaintiff's November 2020 complaints regarding Flint and Plaintiff's FMLA leave application and approval, Flint's hostility towards Plaintiff increased and Defendant made no effort to correct Flint's behavior.

29. Flint also expressed that she knew that Plaintiff had made a complaint about her and indicated that the complaint was "ridiculous" and "unfounded".

30. On or about February 12, 2021, in very close proximity to Plaintiff's request and utilization of intermittent FMLA leave and Plaintiff's complaints of discrimination, Plaintiff was abruptly terminated by Defendant.

31. On the day of Plaintiff's termination, Flint informed Plaintiff that she was coming into work on her day off, and further stated that she was "having the best day of her life." Flint then proceeded to terminate Plaintiff upon arriving to work.

32. The sole reason given to Plaintiff by Flint for her termination was attendance violations. However, Plaintiff's <u>only</u> attendance points included her November medical absences (which should have <u>provisionally designated</u> FMLA) and Plaintiff's additional FMLA absences prior to her termination.

33. Thus, Defendant unlawfully considered state and federally-protected absences in deciding to terminate Plaintiff and Plaintiff's termination was unquestionably discriminatory and retaliatory.

34. Plaintiff believes and therefore avers that she was terminated because of (1) her known and/or perceived disabilities; (2) her record of impairment; (3) her requested accommodations; (4) her complaints of discrimination; (5) Defendant's failure to properly accommodate Plaintiff; and (5) based upon her need for FMLA-qualifying time off.

## COUNT I
### Violation of the Americans with Disabilities Act, as amended (ADA)
([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; and [3] Failure to Accommodate)

35. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

36. Plaintiff suffered from qualifying health conditions under the ADA which affected her ability (at times) to perform some daily life activities.

37. Plaintiff kept Defendant's management informed of her serious medical conditions and need for intermittent time off.

38. Despite Plaintiff's aforementioned health conditions and limitations, she was still able to perform the duties of her job well with Defendant; however, Plaintiff did require reasonable accommodations at times in the form of intermittent time off.

39. Plaintiff requested reasonable accommodations from Defendant, including but not limited to intermittent leave to care for her aforesaid health conditions when she was experiencing a flare-up.

40. In or about November of 2020, Plaintiff required approximately four (4) days off from work due to complications associated with her bi-polar disorder. Plaintiff offered Flint medical documentation to support her need for time off and further advised Flint that she intended to apply for intermittent FMLA leave to cover her disability-related absences and future absences.

41. In direct response to Plaintiff advising Flint of her need for time off, the reason why she needed time off and her intent to apply for FMLA leave related to same, Flint became

extremely hostile with Plaintiff and told Plaintiff that she "does not care" if the absences were FMLA-related and directed Plaintiff not to call off in the future.

42. Flint also penalized Plaintiff for her medically necessary absences in November of 2020 by attributing attendance points to Plaintiff for those days off despite having full knowledge of the reason why Plaintiff needed to take the days off and having been offered medical documentation to support the absences.

43. In addition to this conduct, Flint also displayed a tremendous amount of hostility towards Plaintiff's health conditions. By way of example, but not intended to be an exhaustive list, Flint frequently made inappropriate and discriminatory remarks about Plaintiff's health conditions, including by referring to problematic/difficult customers as "bi-polar" in Plaintiff's presence, accusing Plaintiff as having a "bi-polar moment" on multiple occasions and by stating to other employees to "hold onto your ass, Michelle is having a bi-polar moment."

44. These comments and conduct by Flint at work made Plaintiff extremely uncomfortable and Plaintiff found them to be very discriminatory.

45. Based on Flint's discriminatory conduct towards Plaintiff, Plaintiff complained to Stewart and Seal in November of 2020. In her complaint, Plaintiff reported Flint's discriminatory conduct and comments to Stewart and Seal and further requested that other members of management be present for any future meetings with Flint to avoid any further acts of discrimination.

46. Plaintiff also escalated her concerns regarding Flint's conduct to Ben Poole, Defendant's ethics line investigator.

47. Following Plaintiff's November 2020 complaints regarding Flint and Plaintiff's FMLA leave application and approval, Flint's hostility towards Plaintiff increased and Defendant made no effort to correct Flint's behavior.

48. Flint also expressed that she knew that Plaintiff had made a complaint about her and indicated that the complaint was "ridiculous" and "unfounded".

49. On or about February 12, 2021, in very close proximity to Plaintiff's request and utilization of reasonable accommodations and Plaintiff's complaints of discrimination, Plaintiff was abruptly terminated by Defendant.

50. On the day of Plaintiff's termination, Flint informed Plaintiff that she was coming into work on her day off, and further stated that she was "having the best day of her life." Flint then proceeded to terminate Plaintiff upon arriving to work.

51. The sole reason given to Plaintiff by Flint for her termination was attendance violations. However, Plaintiff's <u>only</u> attendance points included her November medical absences (which should have been accommodated by Defendant) and Plaintiff's additional disability-related absences prior to her termination.

52. Thus, Defendant unlawfully considered state and federally-protected absences in deciding to terminate Plaintiff and Plaintiff's termination was unquestionably discriminatory and retaliatory.

53. Plaintiff believes and therefore avers that she was terminated because of (1) her known and/or perceived disabilities; (2) her record of impairment; (3) her requested accommodations; (4) her complaints of discrimination; and (5) Defendant's failure to properly accommodate Plaintiff; and (5) based upon her need for reasonable accommodations.

54. These actions aforesaid constitute violations of the ADA.

**Count II**
**Violations of the Family and Medical Leave Act ("FMLA")**
**(Interference & Retaliation)**

55. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

56. Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

57. Plaintiff requested intermittent leave from Defendant due to her serious health conditions.

58. Plaintiff had at least 1,250 hours of service with Defendant.

59. Defendant is engaged in an industry affecting commerce and employs fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

60. Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

61. Plaintiff provided appropriate notice to Defendants of her need for FMLA-qualifying intermittent leave in November of 2020.

62. Specifically, in or about November of 2020, Plaintiff required approximately four (4) days off from work due to complications associated with her bi-polar disorder. Plaintiff offered Flint medical documentation to support her need for time off and further advised Flint that she intended to apply for intermittent FMLA leave to cover her disability-related absences and future absences.

63. In direct response to Plaintiff advising Flint of her need for time off, the reason why she needed time off and her intent to apply for FMLA leave related to same, Flint became

extremely hostile with Plaintiff and told Plaintiff that she "does not care" if the absences were FMLA-related and directed Plaintiff not to call off in the future.

64. Flint also penalized Plaintiff for her medically necessary absences in November of 2020 by attributing attendance points to Plaintiff for those days off despite having full knowledge of the reason why Plaintiff needed to take the days off and having been offered medical documentation to support the absences.

65. Following Plaintiff's November 2020 complaints regarding Flint and Plaintiff's FMLA leave application and approval, Flint's hostility towards Plaintiff increased and Defendant made no effort to correct Flint's behavior.

66. On or about February 12, 2021, in very close proximity to Plaintiff's request and utilization of intermittent FMLA leave and Plaintiff's complaints of discrimination, Plaintiff was abruptly terminated by Defendant.

67. On the day of Plaintiff's termination, Flint informed Plaintiff that she was coming into work on her day off, and further stated that she was "having the best day of her life." Flint then proceeded to terminate Plaintiff upon arriving to work.

68. The sole reason given to Plaintiff by Flint for her termination was attendance violations. However, Plaintiff's <u>only</u> attendance points included her November medical absences (which should have <u>provisionally designated</u> FMLA) and Plaintiff's additional FMLA absences prior to her termination.

69. Thus, Defendant unlawfully considered state and federally-protected absences in deciding to terminate Plaintiff and Plaintiff's termination was unquestionably discriminatory and retaliatory.

70. Defendants committed interference and retaliation violations of the FMLA by: (1) terminating Plaintiff for requesting and/or exercising her FMLA rights and/or for taking FMLA-qualifying leave; (2) by considering Plaintiff's FMLA leave needs in making the decision to terminate her; (3) terminating Plaintiff to intimidate her and/or prevent her from taking FMLA-qualifying leave in the future; (4) by taking actions towards Plaintiff that would dissuade a reasonable person from exercising her rights under the FMLA; and (5) failing to designate Plaintiff's requests for intermittent time off for her health conditions as FMLA-qualifying or FMLA protected leave and using FMLA-qualified absences against Plaintiff in making the decision to terminate Plaintiff.

71. These actions as aforesaid constitute violations of the FMLA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B. Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C. Plaintiff is to be awarded punitive and liquidated damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

      D.      Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation where applicable); and

      E.      Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

      Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq.
3331 Street Rd.
Bldg. 2, Ste. 128
Bensalem, PA 19020

Date: June 30, 2021